CATHARINE A. ROLFE

v.

GARRET G. VAN SICKLE'S EXECUTORS.

A testator directed his executors to sell his lands within one year after his decease, or as soon thereafter as in their judgment should seem best for the interest of his estate. He gave to his wife one-third of the use and profits of his estate for life, and the rest to his four daughters, and constituted his wife and D. executors. He died in 1873. At that time his wife and two of his daughters were living on the homestead with him, and they continued to live there until their deaths, which occurred, one in 1876, and the other in 1880. The executors were offered $30,000 for the farm in 1873, but the heirs then declined to sell at that price. The executors rented the farm, and some of the four daughters with their mother continuously occupied the homestead. The executors employed real estate agents for two years to sell the farm, and offered to take $20,000 for it. In 1876, one of the sons-in-law offered the *executor*, (not the widow, with whom he was then living on the farm,) $12,500 therefor, but he declined it. They ultimately sold the farm for about $9,600.— *Held*, that they were not personally chargeable with negligence in not accepting the offer of $30,000, nor the subsequent offer of the son-in-law, which does not appear to have been *bona fide*.

On bill, answer and proofs.

Mr. *John S. Voorhees*, for complainant.

Mr. *W. P. Voorhees*, for executrix defendant.

Mr. *A. V. Schenck*, for executor defendant.

Mr. *E. D. Gillmore*, for defendant Cox.

BIRD, V. C.

The testator died in July, 1873. He had made his wife and William Dunham executrix and executor of his last will, in which he said :

Rolfe *v* Van Sickle's Executors.

"I authorize and direct my executors to sell all my real estate at public or private sale, and to make good and sufficient title or titles therefor within one year after my decease, or as soon thereafter as in their judgment seems best for the interest of my estate."

He gave to his wife the use and profits of one-third of his estate for life, and the rest to his four daughters. He resided on his homestead at the time of his death ; and two of his daughters, Cornelia and Garretta, were there with him. Mrs. Cox (Cornelia) afterwards married; she died in March, 1876. Garretta died in January, 1880. Till 1876 the widow and three of the daughters and the husband of one (Mrs. Cox) remained in the homestead. Then (March, 1876) the complainants left their city home and took up their abode in the homestead, also, and apparently took the management of the household for the widow, who boarded with them for the rent. Traphagen was in possession of the land as tenant on shares at the death of the testator. He made an agreement with the executors for the ensuing year, and continued in possession until the close of 1878. On April 1st, 1879, Mr. Rolfe, one of the complainants, took charge of the farm on shares. He continued in possession until the filing of the bill in this cause, and until the sale was subsequently made. During this period considerable repairs were made.

This land is near New Brunswick. In 1873, at the period of testator's death, it had a high value. It seemed to be advancing day by day. There seemed to be no figure that it would not reach. The family was so impressed. In a short time after the death of the testator, and probably before the will was read, the executor met a gentleman in a store, who said he would give $30,000 for the farm, and would pay $10,000 in cash, and secure the balance. The executor says he made this known to the family, and understood that the executrix and all the children, except the daughter-in-law, demanded still more—$40,000. After the will had been proved, the executor employed competent real estate agents to procure a customer for the farm. After two years and more of effort no sale was effected. The executrix then thought the real estate agents might be dispensed with. She, however, consented to accept $20,000 for the farm. In

1876 Mr. Rolfe asked the executor what he would take for the farm; the executor told him they had agreed on $20,000. Mr. Rolfe offered $100 per acre, or about $12,500. How sincere this offer was appears from the fact that he did not make the offer to the executrix, who was then living with him, nor even make any inquiries of her about it. I think the *bona fides* of this offer further appears from the fact that his wife told the executor, in 1880, that the farm was not worth over $4,000.

The farm was ultimately sold for $70.50 per acre. This is a great reduction from $30,000 for the farm. Although there is a charge of neglect in the bill, for not selling for the $30,000, on the argument that was abandoned. But on the argument it was insisted that the executors were chargeable with the offer made by Mr. Rolfe.

I cannot conclude, from the above facts, that the executor and executrix are chargeable with negligence. It was right for them to listen to the voice of the heirs-at-law. The title was in the heirs, and they could have elected to take the land, the widow consenting. The whole family remained in possession, except Mrs. Rolfe. When Mrs. Cox died, Mrs. Rolfe and her husband entered. While the rents went to the executor, they enjoyed the homestead. The sick children were cared for there. In 1880, after months of languishing, Garretta died.

I certainly cannot charge this mother. I cannot find any ground for doing that which I think would be so highly inequitable. Nor do I think that strict justice requires it. Shall a court of equity chastise a loving and devoted mother for such tenderness and affection towards her offspring? And this view forbids that the executor shall be charged. The power of sale was not divisible. They act as one. He could not sell alone. They could only convey jointly. It is true, he might have sought the aid of this court. But when? When was the discretion expressly given to them by the will exhausted? It is not easy to say. This land had a high market value in July, 1873, but from October of that year, prices declined so rapidly that multitudes refused to sell until the execution came, because they

believed, then, the days of restoration would come quickly, but in vain.

I will advise that the executors are not chargeable with negligence in not selling the farm before they did.

But I think there should be an accounting to this court. I do not believe it would be considered good practice to allow a defendant to select the form in which to answer the bill filed against him. There are many items in the statements found in the answer of Mr. Dunham, such as rents received and receipts for wood and timber sold, which do not properly belong in the account of an executor with no other power over the land than that of sale and a power to distribute the proceeds, but since the very protracted discussion of the case was carried through without reference to this, I think no exceptions should hereafter be made to such items.